J-A06017-24

2024 PA Super 86

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DARCY DEMULTER | : | |
| | : | |
| Appellant | : | No. 237 WDA 2023 |

Appeal from the Judgment of Sentence Entered October 4, 2022
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0008492-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DARCY DEMULTER | : | |
| | : | |
| Appellant | : | No. 238 WDA 2023 |

Appeal from the Judgment of Sentence Entered October 4, 2022
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0008343-2021

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

OPINION BY PANELLA, P.J.E.:                    **FILED: APRIL 26, 2024**

In these consolidated appeals, Darcy Demulter appeals from the

judgment of sentence imposed for her convictions of terroristic threats and

harassment at docket CP-02-CR-0008492-2021, and intimidation of witnesses

or victims, terroristic threats, simple assault, and harassment at docket CP-02-CR-0008343-2021.[1] After careful review, we affirm.

Demulter lives in the same neighborhood as the two victims in this case, Candra Beck and Pamela Rimer. Beck and Rimer were taking a walk around the neighborhood with Beck's 18-month-old child in a stroller on September 7, 2021. When near Demulter's house, Demulter left her house with her two dogs. Demulter approached Beck and asked if she wanted to fight. Demulter went back to her house, tried to put her dogs inside, and then re-approached Beck and struck her. Beck put her hands up to block the strike, but Demulter continued hitting her and grabbed her hair. During the struggle that ensued, Demulter made comments alleging Beck was causing difficulties in Demulter's boyfriend's court hearing and threatened to kill Beck. Demulter's boyfriend is William King, who at the time of this incident, was charged with terroristic threats against both Beck and her fiancé.

Rimer, when she saw Demulter strike Beck, grabbed the child and ran to her house. Rimer immediately called the police, who responded and took statements. Demulter did not deny hitting Beck, but alleged she did so in self-defense. Demulter claimed that Beck charged at her and threw a fake punch, so she reacted and punched Beck two times. Demulter denied threatening to kill Beck and denied mentioning the case involving her boyfriend.

---

[1] 18 Pa.C.S. §§ 2706(a)(1), 2709(a)(1), 4952(a)(1), 2706(a)(1), 2701(a)(1), and 2709(a)(1), respectively.

Approximately a month later, on October 1, 2021, Rimer was at her friend's house a few doors down from her own home. Rimer passed by Demulter's house to get to and from her friend's house. On her way home, while passing Demulter's house, Demulter came down her steps, called Rimer a "F-ing bitch" that lied to get her charged with a felony and threatened to kill Rimer. **See** N.T. Trial, 6/7/22, at 63-64. Rimer ignored Demulter and continued walking home. When a police officer passed by her on routine patrol, she flagged down the officer and reported Demulter's threat.

Demulter was charged with both incidents and proceeded to a consolidated bench trial on June 7, 2022. The trial court found Demulter guilty of all charges. The trial court imposed an aggregate sentence of 6 years of restrictive probation with 18 months of electronic home monitoring on October 4, 2022. Demulter timely appealed and complied with the trial court's order to file a Rule 1925(b) statement of errors complained of on appeal.[2] **See** Pa.R.A.P. 1925(b). Demulter now raises two issues for our review:

> [1.] Whether Ms. Demulter's conviction for [t]erroristic [t]hreats at [CP-02-CR-0008492-2021] can be sustained, where the

---

[2] The certified records provided to this Court include only one Rule 1925(b) statement of errors, which references docket CP-02-CR-0008343-2021. However, the trial court references the Rule 1925(b) statement of errors for docket CP-02-CR-0008492-2021 in its 1925(a) opinion. As our review is not hampered by the apparent error in the filing of the Rule 1925(b) statement of errors on docket CP-02-CR-0008492-2021, we decline to find waiver. **See Commonwealth v. Baker**, --- A.3d ---, 2024 WL 505083, at *3 (Pa. Super. filed Feb. 9, 2024) (Declining to find waiver where the trial court had an "adequate opportunity to prepare an opinion addressing the issue raised[.]") (citation omitted).

Commonwealth failed to prove, beyond a reasonable doubt, that her threat to Ms. Rimer that she was "going to kill" her was communicated with the requisite *mens rea* to terrorize her, as opposed to a mere spur-of-the-moment threat that resulted from anger?

[2.] Whether Ms. Demulter's conviction for [i]ntimidation of [w]itnesses or [v]ictims at [CP-02-CR-0008343-2021] can be sustained, where the Commonwealth failed to prove, beyond a reasonable doubt, that her words or actions were intended to intimidate Ms. Beck into refraining from reporting a crime in the first instance?

Appellant's Brief, at 7.

Our scope and standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Reed**, 216 A.3d 1114, 1119 (Pa. Super. 2019) (citation omitted).

In reference to the incident which occurred on October 1, 2021, Demulter claims that because her threat to Rimer was "just a spontaneous,

- 4 -

non-descript utterance" and there was no physical confrontation after the threat, the evidence was insufficient to convict her of terroristic threats. ***See*** Appellant's Brief, at 21-22. Demulter characterizes her threat as a "spur-of-the-moment rambling" that is "the product of a long-standing feud between residents of the same neighborhood." ***Id.*** at 22. Therefore, Demulter claims, her threat was not made with the required *mens rea*. We disagree, finding that the evidence supports the trial court's verdict.

"To sustain a conviction for terroristic threats, the Commonwealth must prove that the defendant 1) made a threat to commit a crime of violence and 2) the threat was communicated with the intent to terrorize another." ***Commonwealth v. Campbell***, 253 A.3d 346, 348 (Pa. Super. 2021). Demulter is correct that the legislature did not intend to "penalize mere spur-of-the-moment threats which result from anger." ***Id.*** However, "[w]hen determining whether a statement constitutes a terroristic threat, we must look at the statement in light of all the surrounding circumstances." ***Id.***; ***see also*** 18 Pa.C.S. § 2706 cmt.

"The purpose of [the terroristic threats statute] is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience." ***Id.*** "[T]he real issue is whether the Commonwealth presented sufficient evidence to establish the required *mens rea*, not whether the Appellant made the statements in the context of a heated discussion. Being angry does not render a person incapable of forming the intent to

terrorize." ***Commonwealth v. Walls***, 144 A.3d 926, 936 (Pa. Super. 2016) (citations, quotation marks, and brackets omitted). Continuing, this Court explained that "[w]hen two parties have an unplanned, heated confrontation, a threat made during the confrontation is often a spur-of-the-moment threat made during a period of transitory anger." ***Id.*** at 937.

Here, Demulter, as Rimer was walking by her house, called Rimer a "F-ing bitch" and threatened to kill her. ***See*** N.T. Trial, 6/7/22, at 63-64. This was not precipitated by a heated exchange. Rimer had said nothing to Demulter. ***Id.*** at 64. If this threat were made in anger, it certainly was not the result of a spur-of-the-moment, transitory anger. As the trial court aptly noted, these neighbors had been in a "long-standing hostile relationship." Trial Court Opinion, 6/16/23, at 10. Looking at the surrounding circumstances of the threat, we must also consider the evidence of the incident on September 7, 2021. Rimer was present when Demulter threatened and attacked Beck. ***See*** N.T. Trial, 6/7/22, at 59-60. While "[n]either the ability to carry out the threat nor a belief by the persons threatened that it will be carried out" is required for a conviction of terroristic threats, that information may be considered in the totality of the circumstances surrounding the threat. ***See In re B.R.***, 732 A.2d 633, 636 (Pa. Super. 1999).

Rimer personally observed that Demulter had the means and ability to carry out her violent threat. She had previously observed Demulter attack Beck less than a month prior to the threat on her own life. ***See*** N.T. Trial,

6/7/22, at 59-60, 62, 63-64. Based upon the totality of the circumstances presented at trial, we conclude that the Commonwealth presented sufficient evidence to find Demulter had the required *mens rea*. Therefore, we find sufficient evidence to support the trial court's conclusion, and Demulter is entitled to no relief on this issue.

In her next claim, Demulter alleges the trial court erred in finding sufficient evidence to convict her of intimidation of witnesses or victims under subsection 4952(a)(1), as the evidence at trial only showed a violation of subsection 4952(a)(3). **See** Appellant's Brief, at 28. Demulter believes that this error is fatal to the prosecution:

> Based on the plain language of the [i]ntimidation of [w]itnesses or [v]ictims statute, [s]ection 4952(a)(3) pertains to intimidating a witness from testifying in court (or otherwise offering information) about a crime after a charge has already been brought. In sharp contrast, [s]ection 4952(a)(1) is aimed at intimidating a witness from reporting the occurrence of a crime in the first place. Against th[is] backdrop, the Commonwealth simply presented no evidence at the non-jury trial that Ms. Demulter threatened Ms. Beck for the purpose of preventing her from bringing to the attention of law enforcement a crime that had not yet been charged.

*Id.* at 27-28 (emphasis omitted). In relevant part, section 4952 provides:

> (a) Offense defined.—A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:
>
>> (1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

- 7 -

…

> (3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

18 Pa.C.S. § 4952(a)(1), (3).

Demulter phrases this claim as a sufficiency of the evidence challenge, however, this is a challenge to a defect in the criminal information. *See Commonwealth v. Raymond*, 233 A.3d 809 (Pa. Super. 2020). In *Raymond*, the appellant challenged the sufficiency of the evidence for his conviction of intimidation of witnesses or victims under section 4952(a)(1). *Id.* at 811. All parties agreed that Raymond was erroneously charged under section 4952(a)(1), when the facts "more closely align[ed] with the offenses set forth in [s]ubsections 4952(a)(2) and (a)(3)[.]" *Id.* at 814. The victim had already reported information about the crime and had testified at the preliminary hearing, as such, Raymond claimed "his witnesses intimidation conviction cannot stand as the prosecution did not charge him under [s]ubsection 4952(a)(2) or (a)(3)." *Id.* We held that Raymond was challenging a defect in the criminal information and found that his claim was waived because "the defendant was placed on notice of the correct charge, defended against the correct charge, and made no objection to the discrepancy in the charged offense." *Id.* We also noted that even if we did not find waiver, "Appellant would not be entitled to relief as he was not prejudiced by the defect in the criminal information." *Id.* at 815.

Our Supreme Court has addressed similar arguments, albeit not regarding section 4952. In **Commonwealth v. Kelly**, 409 A.2d 21 (Pa. 1979), the appellant challenged his conviction for possession of a controlled substance: "Appellant's first contention is that judgment should be arrested and discharge should be granted on the ground that there was a variance between the complaint charging possession of a controlled substance, erroneously alleged to be heroin, and proof at trial that the controlled substance was methamphetamine." **Id**. at 23.

There, our Supreme Court found:

[v]ariations between allegations and proof at trial are not fatal unless a defendant could be misled at trial, prejudicially surprised in efforts to prepare a defense, precluded from anticipating the prosecution's proof, or otherwise impaired with respect to a substantial right. This Court's review of the record reveals that appellant could not have been prejudiced by the defect in the complaint and that he was well advised of the nature of the offense charged.

**Id.** The Court affirmed Kelly's conviction for possession of a controlled substance. **Id.**

Our Supreme Court has further explained, regarding a homicide charge with a transferred intent theory, that:

Indictments must be read in a common-sense manner, and are not to be construed in an overly technical sense. At an earlier stage of legal development, indictments were strictly and technically construed, and the slightest imprecision in wording was often considered incurable error. Today, however, such arguments are unpersuasive. This Court has upheld criminal indictments possessing a flaw and found them to be constitutional because they put the defendant on sufficient notice of the charge against him or her … A criminal information is not constitutionally

- 9 -

infirm if it notified the defendant of the crime with which he is charged. … It is well settled that a purported variance will not be deemed fatal unless it could mislead the defendant at trial, involves an element of surprise prejudicial to the defendant's efforts to prepare his defense, precludes the defendant from anticipating the prosecution's proof, or impairs a substantial right.

***Commonwealth v. Jones***, 912 A.2d 268, 289 (Pa. 2006) (citations and quotation marks omitted).

Notably, we have held that the same standard applies even when the wrong charge is listed in the criminal information. ***See Commonwealth v. Ford***, 141 A.3d 547 (Pa. Super. 2016). In ***Ford***, the appellant was charged with aggravated assault, recklessly endangering another person, failing to yield, and reckless driving. ***Id.*** at 550. The evidence presented at trial showed that appellant ran a stop sign, and never encountered a yield sign. ***Id.*** at 551. "Appellant's initial argument, though ostensibly a sufficiency of the evidence claim, is primarily focused on the fact that the trial court found him guilty of failing to stop at a stop sign when the criminal information sets forth the charge as failing to stop at a yield sign." ***Id.*** at 553.

> We first address the discrepancy between the criminal information and the charge that the trial court found Appellant guilty of violating. Appellant is correct that the criminal information references yield sign violations. However, he is entitled to no relief. Initially, we agree that this aspect of Appellant's position is waived. Although sufficiency of the evidence arguments need only be preserved in a Rule 1925(b) concise statement, Appellant's actual argument relates to a defect in the criminal information. Not only did Appellant not raise this issue at any stage of the trial court proceedings before filing his 1925(b) statement, counsel expressly placed on the record that Appellant was defending against a failure to stop.

…

Here, Appellant was not only on notice of the stop sign violation, but defended against that charge. Since there was no objection to the discrepancy between the charges of failure to yield, leveled in the criminal information, and the related charge of failing to stop at a stop sign, for which he was prosecuted and found guilty, this aspect of his argument is waived.

Even if not waived, the defect with the criminal information, standing alone, does not warrant relief. Concededly, the criminal information contained headings for failure to yield and described that offense, citing only to 75 Pa.C.S. § 3323. The criminal information did not cite § 3323(b), the specific provision relative to stop signs.[] However, our criminal procedural rules provide, "The information shall contain the official or customary citation of the statute and section thereof, or other provision of law that the defendant is alleged therein to have violated; but the omission of or error in such citation shall not affect the validity or sufficiency of the information." Pa.R.Crim.P. 560(C). **See also Commonwealth v. Grant**, 121 Pa. Super. 399, 183 A. 663, 666 ([Pa. Super.] 1936) ("an indictment is not defective because it does not refer to the act of assembly on which it was based.").

*Id.* at 554-55.

In this case, Demulter knew her boyfriend's court hearing was ongoing; and that Beck had already reported the crime to the police. During Demulter's attack on Beck, she said "you're trying to mess with my boyfriend's court hearing[.]" N.T. Trial, 6/7/22, at 28-29. Defense counsel argued during her motion for judgment of acquittal that because "Ms. Demulter doesn't tell her not to appear in court[; s]he doesn't tell her that she shouldn't come to court" the Commonwealth did not meet their burden of proving intimidation of witnesses or victims. *Id.* at 74-75. During her own testimony, Demulter denied mentioning the case involving William King. *Id.* at 81. During closing

- 11 -

arguments, defense counsel averred that the Commonwealth did not meet their burden:

> So, I am going to reiterate what I argued during [my] motion [for] judgment of acquittal, but in addition to that, Ms. Demulter testified that during this altercation, she never said anything about the case. She never mentioned it. She never said about her boyfriend at all. In addition to that, when Ms. Beck was on the stand, she could not even recall if the case was active at the time of this incident. … Well, there was no documentation put into the record to show that there was an active case where Mr. [King] was the defendant and Ms. Beck and her boyfriend were the victims at the time. And nobody can tell us when the case went to trial.
>
> And also Ms. Beck testified that – and I am renewing the argument that I made when I asked for judgment of acquittal. It's not clear if the fight – like, these are two neighbors that do not like each other. This has been ongoing. Ms. Beck testified that the officers have had to report to their street multiple times for incidents between her and Ms. Demulter. It's not clear if the fight was because they don't like each other or whether it was Ms. Demulter said something about Ms. Beck's daughter. It could have been for a number of reasons.
>
> Furthermore, now that I have my transitory anger argument, I would argue that if you believe that Ms. Demulter had said that she was going to kill Ms. Beck, I would argue that that was not in relation to the case with William King. That was in relation to Ms. Demulter being angry, being in the heat of the moment, being in the spur of the moment and just saying something out of anger, out of frustration.
>
> So[,] I would argue that the Commonwealth has not proved beyond a reasonable doubt that Ms. Demulter intimidated witnesses or victims, that she made threats, or that she assaulted – or that she did not act in self[-]defense.

N.T. Trial, 6/7/22, at 103-105. It is clear that Demulter argued against subsection 4952(a)(3), in addition to arguing that Demulter never brought up her boyfriend's court hearing during the fight.

- 12 -

At no point does Demulter challenge the criminal information, nor point out that the wrong subsection was charged. Therefore, this claim is waived. Even if not waived, Demulter is not entitled to relief. The Commonwealth did not mislead Demulter, Demulter was not surprised by the facts raised at trial, and there was nothing to show any prejudice to Demulter based on the error in the information. Demulter knew exactly what she was defending against and made the appropriate arguments and defended on the merits of the allegations and the facts. *See id.* at 74-75 ("Ms. Demulter doesn't tell her not to appear in court. She doesn't tell her that she shouldn't come to court. … There was nothing for them to show that Ms. Demulter struck Ms. Beck because of these other cases."). Consequently, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

FILED: 4/26/2024

- 13 -