J-A18027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ALEXIS WILLIAMS :
:
Appellant : No. 1454 EDA 2024

Appeal from the Judgment of Sentence Entered April 29, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000940-2023

BEFORE: OLSON, J., DUBOW, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED JULY 14, 2025**

Alexis Williams ("Williams") appeals from the judgment of sentence imposed by the Philadelphia Court of Common Pleas ("trial court") following her convictions of one count each of access device fraud, theft by unlawful taking, receiving stolen property, and securing execution of documents by deception.[1] After careful review, we affirm.

On September 20, 2022, at approximately 4:00 p.m., Margaret Arvelo ("Arvelo") accompanied her partner, Wilma Mercado ("Mercardo"), to the Thomas Jefferson University Hospital emergency room to be treated. Williams, a hospital employee, approached the couple and informed them Mercado required a co-pay of $150. Arvelo gave Williams her credit card to

_____

[1] 18 Pa.C.S. §§ 4106, 3921, 3925, 4114.

cover the cost of the co-pay and Williams returned the credit card. At 12:10 a.m. on September 21, 2022, Arvelo's bank sent an automated text message alerting her to two suspected fraudulent charges. The text message identified a $303.85 charge to Cash App and a $266.67 charge to AT&T for an account associated with a phone number registered in Texas. Arvelo contacted her bank to dispute the two charges the following day. The charges occurred during the time period that Williams had possession of the credit card. Arvelo notified the hospital about the charges, and subsequently, James Burns, an investigator at the hospital, confirmed Williams' presence in the hospital at the time of the incident. Police obtained a subpoena, which revealed Williams' AT&T subscriber information showed a payment for $266.67 with Arvelo's credit card. Further, police determined the unauthorized Cash App charge was sent to an account belonging to Williams.

The police arrested Williams, and the Commonwealth charged her with the above listed crimes. Notably, the Commonwealth charged her with access device fraud under 18 Pa.C.S. § 4106(a)(2). After Williams waived her right to a jury trial, the matter proceeded to a bench trial, following which the trial court found Williams guilty of all charges. On April 29, 2024, the trial court sentenced Williams to three years of reporting probation and 200 hours of community service for access device fraud, and no further penalty for the remaining charges. Williams' timely appeal followed.

On appeal, Williams presents the following question for our review: "Was the evidence insufficient to convict Williams of access device fraud under [18] Pa.C.S. § 4106(a)(2) where there was no evidence that she made, published, transferred, offered, or aided another in using an access device?" Williams' Brief at 2.

Before this Court, Williams contends that her conviction of access device fraud under section 4106(a)(2), which prohibits "publishing, making, selling, giving, or transferring [an access device and] involves a transaction to another person," is unsupported by the evidence, which reveals an attempt to use a credit card to pay a bill or get a cash advance." *Id.* at 10 (citation omitted). She asserts that the evidence presented—including Arvelo's bank statements, eyewitness testimony, hospital employment records, and subpoenaed information linking the charges to Williams' account—failed to establish that she committed the conduct prohibited under subsection (a)(2). *Id.* at 9-10, 11. Williams concedes that her conduct falls under section 4106(a)(1)(ii), which prohibits the unauthorized use of access devices to obtain property, but argues that she was not charged at this subsection, rendering it irrelevant. *Id.* at 14-15.

Our review of the relevant provisions confirms Williams' read of subsections (a)(1)(ii) and (a)(2) of the access device fraud statute.[2] Williams' challenge to the sufficiency of the evidence to support her conviction, however, does not entitle her to relief. Although Williams frames her claim as a sufficiency challenge, she is in fact asserting that there is a defect in the criminal information. *See Commonwealth v. Raymond*, 233 A.3d 809, 814 (Pa. Super. 2020) (stating that argument that appellant was erroneously charged under the wrong subsection of a criminal statute does not raise a challenge to the sufficiency of the evidence, but instead raises a claim that the criminal information was defective). "[V]ariations between allegations and

_____

[2] Section 4106 provides, in relevant part:

**(a) Offense defined.--**A person commits an offense if he:

(1) uses an access device to obtain or in an attempt to obtain property or services with knowledge that:

* * *

(ii) the access device was issued to another person who has not authorized its use

* * *

(2) publishes, makes, sells, gives, or otherwise transfers to another, or offers or advertises, or aids and abets any other person to use an access device knowing that the access device is counterfeit, altered or incomplete, belongs to another person who has not authorized its use, has been revoked or canceled or for any reason is unauthorized by the issuer or the device holder[.]

18 Pa.C.S. § 4106(a).

- 4 -

proof at trial are not fatal unless a defendant could be misled at trial, prejudicially surprised in efforts to prepare a defense, precluded from anticipating the prosecution's proof, or otherwise impaired with respect to a substantial right." ***Commonwealth v. Demulter***, 314 A.3d 934, 939 (Pa. Super. 2024) (citation omitted). "A criminal information is not constitutionally infirm if it notified the defendant of the crime with which [s]he is charged." ***Id.*** at 940 (citation omitted). "We have held that the same standard applies even when the wrong charge is listed in the criminal information." ***Id.*** "[A] defendant waives his challenge to a defect in the criminal information if the defendant was placed on notice of the correct charge, defended against the correct charge, and made no objection to the discrepancy in the charged offense." ***Raymond***, 233 A.3d at 814.

The record reflects that Williams never challenged the criminal information before the trial court or indicated that she was charged under the wrong subsection. Therefore, the claim is waived on appeal. ***See Demulter***, 314 A.3d at 941 (concluding that defendant's failure to challenge the criminal information or point out that the wrong subsection was charged before the trial court renders the claim waived); ***see also Raymond***, 233 A.3d at 815 (same).

Even if not waived, Williams' claim is meritless. Williams was clearly aware of the correct charge and defended against the claim that she used Arvelo's credit card without authorization. ***See, e.g.,*** N.T., 12/5/2023, at 18-

19 (defense counsel cross-examining Arvelo about whether she observed Williams using her credit card).  Williams' closing argument centered on the reliability of the witness testimony and lack of video evidence to support the contention that Williams used Arvelo's credit card without her permission.  ***Id.*** at 62.

Williams does not argue that her "defense strategy would have changed with the substituted charges," nor would the record support such a claim.  ***See Raymond***, 233 A.3d at 816; ***see also Demulter***, 314 A.3d at 941-42.  Instead, the record is clear that Williams was aware of "what she was defending against and made the appropriate arguments and defended on the merits of the allegations and the facts," and has not established that she was prejudiced by the defective criminal information.  ***See Demulter***, 314 A.3d at 942.  Accordingly, Williams' claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/14/2025