2025 PA Super 194

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEO ALI MCGRAW | : | |
| | : | |
| Appellant | : | No. 1257 MDA 2024 |

Appeal from the Judgment of Sentence Entered August 20, 2024
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0001996-2023

BEFORE:   BOWES, J., STABILE, J., and STEVENS, P.J.E.[*]

OPINION BY BOWES, J.:                    **FILED: SEPTEMBER 4, 2025**

Leo Ali McGraw appeals from the judgment of sentence of three years of probation imposed upon his conviction of terroristic threats.  He challenges the sufficiency of the evidence and the legality of the probation condition requiring him to comply with all mental health recommendations and prescribed medications.  We affirm.

On September 2, 2022, several officers from the North Middleton Township Police Department served a warrant on Appellant for an involuntary mental health commitment pursuant to § 302 of the Mental Health Procedures Act.  Patrolman Joseph Murphy encountered Appellant at the door of his home and asked him to come outside to speak to the officers in his driveway.  When Appellant began to retreat back into his home, Patrolman Murphy attempted to stop him.  Appellant ran up the stairs and Patrolman Murphy pursued,

_____

[*] Former Justice specially assigned to the Superior Court.

tackling him in the kitchen. In the process, his bodycam became dislodged. Other officers followed for backup as Appellant struggled and tried to take the patrolman's firearm. Appellant succeeded in removing his flashlight. He struck the patrolman with it as he continued to pull at the holster and firearm. Two other officers restrained Appellant, handcuffing him on his back with his hands in front. Patrolman Murphy remained in a mount position on top of his legs through the remainder of the encounter.

After Appellant calmed and he could speak with the officers, they attempted to have him sit up so they could discuss their reason for being there. Although matters had de-escalated at that point and Appellant's mother and sister had arrived, Appellant suddenly began grabbing at Patrolman Murphy again. As he did so, he screamed at him, more than once, "Do you want me to shoot you with your own gun?" ***See***, ***e.g.***, Commonwealth's Exhibit 2 (Bodycam of Sergeant Jeffrey Kolodzi). Appellant was eventually subdued again and transported to the hospital.

As a result of this conduct, the Commonwealth charged Appellant with disarming a law enforcement officer and terroristic threats. Thereafter, the Commonwealth filed a motion to modify bail conditions because it was concerned about Appellant's mental health should he be discharged from the hospital where he was receiving treatment. Of particular relevance, it asked the court to impose a special condition requiring him to follow all recommended treatments upon release, including taking any prescribed medications. The court granted the modification request after a hearing.

- 2 -

Appellant proceeded to a jury trial. Patrolman Murphy and Sergeant Kolodzi testified. The jury viewed their bodycam footage, as well as that of assisting officer Deric Brazeal. Appellant testified in his defense. He denied trying to take Patrolman Murphy's firearm but acknowledged that he made the statements, though he characterized them not as intentional threats, but as "more of a hypothetical situation." N.T. Trial, 6/26-27/24, at 82. At the conclusion of trial, the jury convicted him of terroristic threats and found him not guilty of disarming an officer. The court sentenced him as indicated hereinabove and imposed a special condition that he abide by all mental health treatment recommendations and take his prescribed medications.

This appeal followed. Appellant complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement,[1] and the court issued a responsive Rule 1925(a) opinion. In this Court, Appellant presents the following issues for our consideration:

> I. Was there sufficient evidence presented at trial to convict Appellant of terroristic threats for statements made in the heat of the moment during a period of transitory anger and confusion during the service of a warrant under § 302 of the Mental Health Procedures Act?
>
> II. Was the special condition of probation imposed by the trial court requiring Appellant to remain compliant with his psychiatric medications statutorily authorized and constitutionally lawful?

---

[1] We remind the court that all Rule 1925(b) orders must include, *inter alia*, "both the place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement." Pa.R.A.P. 1925(b)(3)(iii).

Appellant's brief at 6 (capitalization altered).

Appellant first challenges the sufficiency of the evidence to sustain his terroristic threats conviction. We consider this mindful of the following:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Beasley***, 138 A.3d 39, 45 (Pa.Super. 2016) (cleaned up).

Turning to the conviction at issue, "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S. § 2706(a)(1). We have explained:

> For a defendant to be convicted of terroristic threats, the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror. Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense. Rather, the harm sought to be prevented by the statute is the

- 4 -

psychological distress that follows from an invasion of another's sense of personal security.

**Beasley**, 138 A.3d at 46 (cleaned up).

Our "legislature did not intend to penalize mere spur-of-the-moment threats which result from anger. However, when determining whether a statement constitutes a terroristic threat, we must look at the statement in light of all the surrounding circumstances." **Commonwealth v. Demulter**, 314 A.3d 934, 937–38 (Pa.Super. 2024) (cleaned up). This Court has held that "when two parties have an unplanned, heated confrontation, a threat made during the confrontation is often a spur-of-the-moment threat made during a period of transitory anger." **Id**. at 938 (cleaned up). However, "[b]eing angry does not render a person incapable of forming the intent to terrorize." **Id**. (cleaned up).

Appellant maintains that he did not instigate the interaction and that the statements occurred "during a very heated exchange with an officer who had imposed his physical will over a malnourished and mentally unstable man and did not persist as he was being removed from the residence[.]" Appellant's brief at 23. He emphasizes that he "only made his statements after police rushed his house, threw him to the ground, and had not explained their purpose for detaining him." **Id**. In sum, Appellant contends "that the statement was made in passing anger during a very distressing and confusing moment . . . and [he] lacked the necessary *mens rea* to support a conviction in this matter." **Id**. at 24.

Our review of the record belies Appellant's characterization and timeline. As detailed above, Appellant was combative with Patrolman Murphy as he attempted to subdue him, striking the patrolman with his own flashlight and attempting to take his firearm. Two officers had to restrain Appellant's arms in handcuffs while the patrolman restrained his legs. Although he was momentarily calm, Appellant's agitation peaked again when he screamed for help. However, the matter de-escalated as his mother and sister appeared. The officers calmly spoke with Appellant at that point about sitting up so they could talk and he asked to sit in his bedroom. Unprompted, Appellant once more began grabbing at Patrolman Murphy with handcuffed arms, and screamed in his face multiple variations of, "Do you want me to shoot you with your own gun?" *See, e.g.*, Commonwealth Exhibit 2.

Thus, contrary to Appellant's assertion, this was not a spur-of-the moment comment during an unplanned interaction. Appellant had several minutes to talk to the officers present and to calm down while he was restrained. Instead, unprovoked, he again attempted to take the patrolman's firearm and demand whether he wanted to be shot with it. Based on the foregoing, the Commonwealth presented sufficient evidence to establish Appellant's *mens rea* for terroristic threats. He is therefore not entitled to relief on his first issue.

Next, he challenges the legality of one of his probation conditions.[2] "When reviewing the legality of a sentence, our standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v. Strouse***, 308 A.3d 879, 884 (Pa.Super. 2024) (cleaned up). "A sentence is illegal if no statutory authority exists for the sentence." ***Id***. (cleaned up). We have explained the court's authority in imposing special conditions of probation thusly:

> A trial court must attach conditions of probation "it deems necessary to ensure or assist the defendant in leading a law-abiding life." 42 Pa.C.S. § 9754(b). The court, among other conditions, may require the defendant "to do things reasonably related to rehabilitation." 42 Pa.C.S. § 9763(b)(15). The court has the discretion to fashion conditions of probation, but those conditions must be reasonable and devised to serve rehabilitative goals, such as recognition of wrongdoing, deterrence of future criminal conduct, and encouragement of law-abiding conduct.

***Id***. at 883 (cleaned up). Although medication is not specifically mentioned, our legislature also included as a permissible general condition "[t]o undergo available medical or psychiatric treatment or to enter and remain in a specified institution, when required for that purpose." 42 Pa.C.S. § 9763(b)(5).

Appellant concedes the rationality of the condition requiring Appellant to take his prescribed medications given the totality of the circumstances

_____

[2] The Commonwealth and the trial court interpret this as a challenge to the discretionary aspects of Appellant's sentence. ***See*** Trial Court Opinion, 12/12/24, at 7 (concluding that the court was within its discretion to impose the condition); Commonwealth's brief at 14-16. Since Appellant challenges the court's authority to impose the condition, we review it as an illegal sentencing claim. ***See Commonwealth v. Strouse***, 308 A.3d 879, 882-84 (Pa.Super. 2024) (differentiating between a challenge to the reasonableness of a probation condition, which implicates the discretion of the court, and the authority to impose the condition, which involves the legality of the sentence).

surrounding the incident and his treatment thereafter, but argues that it is unlawful because it is not particularly authorized by § 9763. *See* Appellant's brief at 29-30. He highlights the "very long history of the right to self-determination in this country" and the legislature's ability to include, when it deems it appropriate, specific references to requiring someone to take prescribed medication. *Id*. at 30-33. Specifically, Appellant contrasts § 9763(b) with the section governing disposition for individuals found guilty but mentally ill, where the legislature specifically referenced the failure to take prescribed medications as a reason for conducting a probation violation hearing. *Id*. at 25-26 (citing 42 Pa.C.S. § 9727(f)(2) ("Failure to continue treatment, including the refusal to take such drugs as may be prescribed, except by agreement of the sentencing court, shall be a basis for the institution of probation violation hearings.").

The trial court explained its imposition of this condition as follows:

> It is without question that [Appellant] has had a history of mental health issues. The unlawful conduct in the case at bar was a direct result of these issues. As part of the [§] 302 [involuntary mental health commitment] warrant application giving rise to this case, his family stated that they believed he was "severely mentally disabled" and a "clear and present danger to others." The application attributed his dangerous behaviors to his not taking his medications. Additionally, while [Appellant] was still hospitalized after the events leading to these charges, his bail was modified to require that he comply with all mental health recommendations, including taking prescribed medications upon discharge.[22]
>
> _____
>
> [22] . . . Notably, [Appellant] did not appeal the [c]ourt's [o]rder granting the Commonwealth's [m]otion, despite the fact that the modified bail conditions contained language

> that is almost identical to the sentencing order at issue in this appeal. . . .
>
> The special condition at issue in this appeal requires [Appellant] to "comply with all mental health treatment recommendations of his providers, including the taking of any prescribed medications." In light of [Appellant]'s past mental health issues and the behavior described in the [§] 302 warrant at the center of this case, we felt the special condition was consistent with the protection of the public, the gravity of the offense as it relates to the impact on the community, and the rehabilitative needs of the defendant. As the "catchall" provision in 42 Pa.C.S. § 9763 empowers us to impose conditions that require a defendant to do things that are reasonably related to rehabilitation, there is no reason why the special condition imposed in this matter should be considered unlawful. [Appellant]'s criminal conduct is directly related to his mental health issues. Requiring him to take his prescribed medications is vital to both his rehabilitative needs and the protection of the public. Furthermore, when taking into account [Appellant]'s situation as a whole, the mental health conditions of his probation are reasonable.

Trial Court Opinion, 12/12/24, at 6-7 (some footnotes, citations, quotation marks, and ellipses omitted).

We agree. Section 9763 grants the trial court authority to impose conditions that require Appellant "[t]o undergo available medical or psychiatric treatment" and are "reasonably related to rehabilitation." 42 Pa.C.S. § 9763(b)(5), (15). Certainly, under the totality of the circumstances of this case, ordering Appellant to take his prescribed medications as part of requiring him to undergo medical/psychiatric treatment is rationally related to his rehabilitation. Since this condition is authorized by statute, it is lawful.

Based on the foregoing, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: 09/04/2025