J-A23010-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SCOTT R. REICHERT | : | |
| | : | |
| Appellant | : | No. 1077 WDA 2024 |

Appeal from the Judgment of Sentence Entered July 3, 2024
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0000829-2023

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.:          **FILED: October 27, 2025**

Scott R. Reichert appeals from the judgment of sentence entered in the Court of Common Pleas of Beaver County after he was convicted of various offenses at a non-jury trial. Appellant challenges the sufficiency and weight of the evidence. After careful consideration, we affirm.

This case arises out of a series of events that occurred on April 30, 2023, when Appellant and his son, Zachary Reichert ("Son"), were involved in a verbal and physical altercation that escalated to implicate other family members. On May 31, 2023, Appellant was charged by criminal information, and a non-jury trial was held on June 3, 2024. The trial court accurately summarized the evidence presented at trial as follows:

> At trial, four witnesses testified to the events of the day in question. For the Commonwealth, Zachary and Samantha Reichert, as well as Officer Ethan Fuchs testified. [Appellant testified] on his own behalf.

The first witness was [Son, who] testified that he had come to [Appellant's] home [around noon] to bury his dog, [which] had passed that morning, [because Appellant] had land and he did not. … [Son testified] that he had been injured earlier in the day and as a result, could not manually dig, [which led] to the use of the tractor and other machine equipment[.] Something broke on the tractor while [Son] was attempting to drive it[,] which led to an argument between [him] and [Appellant]. [Son stated] that the argument escalated[,] and as he was [leaving], [Appellant] pulled a gun and pointed it at him. The Commonwealth then played a video, taken from [Appellant's] porch camera, which displayed the events [that unfolded] in front of the home. [*See* Commonwealth's Exhibit 1.] [Son] identified [Appellant and himself in] the video and identified a moment when [Appellant] hit him with a cane in the rib cage, noting that it caused him some pain. [Son] and his family, his wife and three minor children, retreated to his vehicle while [Appellant] went to his own car and retrieved a handgun[.] [Son] stated that he saw [Appellant] obtain his gun and then point it down the driveway towards [him] and his family. [The] Commonwealth then submitted two photos of bruises left by [Appellant] on [Son], arising from the cane strikes. On cross-examination, [Son] stated that he was on the property for around twenty minutes prior to the video footage shown. He explained that the tractor's hitch was damaged because his injury prevented him from braking quickly enough when trying to align the hitch with a piece of equipment. It was this incident, according to [Son], that caused [Appellant] to become enraged. He admitted that, in the heat of the moment, he threatened to "fuck up" [Appellant]. [N.T. Trial, 6/3/24, at 16.]

The next witness [presented] by the Commonwealth was [Son's] wife, Samantha Reichert [("Daughter-in-Law")]. She explained that the family was there to bury their dog when her husband and [Appellant] began to argue. She claim[ed] that during the fight, she [yelled] at her kids to get in the car[, and that she] was the one driving the vehicle [and] attempting to back out of the driveway in the video. While backing up the vehicle, she saw [Appellant] retrieve what she believed was a gun from his own vehicle. She stated that they fled to the closest gas station where her husband called the police, due to her being in a state of hysteria. She was terrified for her and her children's lives [because Appellant approached] them with a gun. On cross-examination, she confirmed that they had only been at the house for around

- 2 -

[twenty] minutes when things escalated. She stated that she did see the gun[, and that her kids were "freaking out." *Id.* at 23.]

The Commonwealth then called Officer Ethan Fuchs as their final witness. [Officer] Fuchs was a patrolman with the New Sewickley Township Police Department and at the time of [trial], had been employed there for four years. He stated that on April 30, 2023, he was dispatched to a gas station on Route 989 to speak to [Son and Daughter-in-Law] about an incident with [Appellant]. After questioning, [Officer Fuchs] sent the Reicherts home, proceeded to obtain an arrest warrant for [Appellant], and then later placed [Appellant] under arrest. … Through a search warrant, two rifles and two handguns were obtained from [Appellant's] home. One of the handguns was a black Glock, identified as the weapon in question, which had an amount of dirt on the grip and slide.

The Commonwealth closed its [case-in-chief,] and [Appellant testified] in his own defense. [Appellant] testified that [Son] called him earlier in the day and asked if he could bury his dog [on Appellant's property]. [Appellant] agreed, but [informed Son] that he was recovering from surgery. [Appellant stated that he] was unsure how he was able to do what [he was depicted doing] in the submitted video given his injuries. [Appellant claimed he was not supposed to do anything because] there was a risk of paralysis [from] the surgery he had undergone[, and he informed Son] that he would have to do [] the work [because Appellant] was injured. … Ultimately, due to both of their injuries, [Appellant] testified that he wanted to give up on burying the dog, but [Son] insisted on [hooking] the backhoe [up] to the tractor. Despite [Son] not [knowing how to operate Appellant's tractor, Appellant] acquiesced and allowed him to attempt to use it anyway. Issues in the attempt [] caused tempers to flare between [Appellant and Son]. [Appellant testified] that a scuffle arose when [Son became] increasingly agitated with the tractor and was [] in danger of damaging the equipment and harming either himself or [Appellant]. [Appellant] attempted to stop the tractor and, in the process, nearly fell. To steady himself, he gripped onto [Son], who allegedly responded by kicking him in the chest and onto the ground. [Appellant testified that he] then took the keys to the tractor and left the barn, leading to the events that unfolded [in] the video. [Appellant] claimed that he [retrieved] his firearm after he repeatedly told [Son] to leave[,] and after [Son] continued to threaten him, he became afraid. [Appellant testified] that he [pointed] the gun at the ground the whole time and was instead

simply [commanding Son] to leave his property. He then testified that his girlfriend[, Sherri Painter ("Girlfriend"), approached and grappled] with him over the gun. He further [testified that during the altercation with Girlfriend,] he ejected the magazine for safety, and at the end of the scuffle he discharged the round in the chamber to completely empty the firearm. He testified that the gun was totally empty while he and [Girlfriend wrestled] over it and that he never pointed the firearm at anyone. On cross-examination, he stated that the kick delivered to him by [Son] was aggressive[] but not meant to physically hurt him. He further testified that [Son] took no physically aggressive actions toward him, nor drew a weapon, during the confrontation. When questioned about when [and why he retrieved his firearm], he stated it was when the family was backing out of the [driveway] and because [] he needed to use "the appropriate amount of force" to protect himself and make [Son] leave his property. [***Id.*** at 52.]

Trial Court Opinion, 12/30/24, at 1-5 (unpaginated) (citations omitted).

The trial court found Appellant guilty of three first-degree misdemeanor and two second-degree misdemeanor counts of simple assault by physical menace[1], one first-degree misdemeanor count of terroristic threats[2], two second-degree misdemeanor counts of simple assault[3], and one third-degree misdemeanor count of harassment[4] and imposed an aggregate sentence of 3 years' probation and a $258 fine. Appellant timely filed a post-sentence motion challenging the sufficiency and weight of the evidence, which the trial

_____

[1] 18 Pa.C.S.A. § 2701(a)(3).

[2] 18 Pa.C.S.A. § 2706(a)(1).

[3] 18 Pa.C.S.A. § 2701(a)(1).

[4] 18 Pa.C.S.A. § 2709(a)(1).

court denied on August 1, 2024. On September 3, 2024, Appellant filed a notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925. The Commonwealth did not file a brief in this matter.

In his first issue, Appellant argues that the evidence was insufficient to support the verdicts. Appellant's Brief, at 9. In the second issue, Appellant argues that the guilty verdict was against the weight and sufficiency of the evidence where the Commonwealth's evidence was of such low quality, and was so tenuous, vague, and uncertain as to render the verdict pure conjecture and shock the conscience of the court. *Id.*

Initially, Appellant claims the Commonwealth's evidence was insufficient to sustain his convictions of simple assault and terroristic threats. A challenge to the sufficiency of the evidence "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Peters*, 320 A.3d 1231, 1236 (Pa. Super. 2024) (*en banc*) (citation omitted).

> Our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.
>
> In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that

- 5 -

as a matter of law no probability of fact may be drawn from the combined circumstances.

*Id.* (brackets and citations omitted). "When determining whether the defendant had the requisite intent to commit a crime, the fact-finder is free to conclude that the defendant intended the natural and probable consequences of his actions." *Commonwealth v. Campbell*, 253 A.3d 346, 348 (Pa. Super. 2021) (citation omitted).

Appellant's convictions of simple assault by physical menace and terroristic threats were based on his act of approaching the retreating vehicle occupied by Son, Daughter-in-Law, and his three grandchildren with a firearm following a heated exchange with Son. First, Appellant avers the Commonwealth's evidence was insufficient to sustain his simple assault by physical menace convictions because it failed to establish that it was his "conscious object and intent to put the victims in fear of imminent serious bodily injury." Appellant's Brief, at 14 (emphasis omitted). Specifically, Appellant maintains that "the simple act of brandishing a firearm in response to a hostile, antagonizing, and threatening party, without more, does not raise to the level of simple assault by physical menace as defined by section 2701(a)(3)." *Id.* at 16. Second, Appellant avers the Commonwealth's evidence was insufficient to sustain his conviction of terroristic threats because it failed to demonstrate that he "communicated a threat to commit any crime of violence with intent to terrorize another." Appellant's Brief, at 19 (emphasis omitted). We disagree.

A person is guilty of simple assault under section 2701(a)(3) if he "attempts by physical menace to put another in fear of imminent serious bodily injury[.]" 18 Pa.C.S.A. § 2701(a)(3). "The act of pointing a gun at another person can constitute simple assault as an attempt by physical menace to put another in fear of imminent serious bodily injury." *Commonwealth v. Reynolds*, 835 A.2d 720, 726 (Pa. Super. 2003) (brackets and citation omitted). "Intent can be proven by circumstantial evidence and may be inferred from the defendant's conduct under the attendant circumstances." *Id.* (citations omitted) (finding appellant's conduct of pointing a gun at victims and threatening their lives evidenced intent for purposes of section 2701(a)(3)); *see Commonwealth v. Little*, 614 A.2d 1146, 1148 n.2 (Pa. Super. 1992) (finding sufficient evidence to establish simple assault by physical menace where "appellant erratically emerged from her home carrying a shotgun, shouting and advancing from her porch" even though appellant never pointed the gun at deputies because appellant's "overall demeanor and actions were designed to... put the deputies in fear of imminent serious bodily injury").

"A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to... commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1). Section 2706 further defines the term "communicates" as "conveys in person or by written or electronic means[.]" 18 Pa.C.S.A. § 2706(e). "An express or specific

threat is not necessary to sustain a conviction for terroristic threats."
***Commonwealth v. Martinez***, 153 A.3d 1025, 1028 (Pa. Super. 2016)
(citation omitted). Rather, certain nonverbal gestures may rise to the level of
communication contemplated by section 2706 when considered with the
surrounding circumstances of the encounter. ***See Commonwealth v. Kline***,
201 A.3d 1288, 1291 (Pa. Super. 2019) (finding sufficient communication
based on the combination of "the menacing gesture of a shooting gun
recoiling, while pointed at the victim, [and appellant's] past stalking-like
behavior in relation to the victim"); ***see also In re Maloney***, 636 A.2d 671,
676 (Pa. Super. 1994) (finding act of pointing a gun at victim and telling him
to "get the fuck out of here" was sufficient to establish terroristic threats as
"[t]he words spoken, combined with the pointing of the gun, suggest a threat
that [victim] would have been shot if he did not leave as [] commanded").
"While neither the ability to carry out the threat nor a belief by the persons
threatened that it will be carried out is required for a conviction of terroristic
threats, that information may be considered in the totality of the
circumstances surrounding the threat." ***Commonwealth v. Demulter***, 314
A.3d 934, 938 (Pa. Super. 2024) (internal quotation marks, brackets, and
citation omitted).

Furthermore, the purpose of the terroristic threats statute is "to impose
criminal liability on persons who make threats which seriously impair personal
security or public convenience. It is not intended … to penalize mere spur-of-

the-moment threats which result from anger." 18 Pa.C.S.A. § 2706, *Comment*. However, being angry during an encounter does not absolve an individual from criminal liability under the statute:

> The real issue is whether the Commonwealth presented sufficient evidence to establish the required *mens rea*, not whether the Appellant made the statements in the context of a heated discussion. Being angry does not render a person incapable of forming the intent to terrorize. … [W]hen two parties have an unplanned, heated confrontation, a threat made during the confrontation is often a spur-of-the-moment threat made during a period of transitory anger.

*Demulter*, 314 A.3d at 938 (quotation marks, and citations omitted).

Here, the evidence elicited at trial, when viewed in the light most favorable to the Commonwealth as verdict-winner, was sufficient to sustain Appellant's simple assault by physical menace and terroristic threats convictions. The video showed that: Son and Appellant were engaged in a heated argument; Appellant struck Son with a cane; Son retreated to his vehicle, which was also occupied by his wife and three minor children, to leave the premises; Appellant retreated into his home only to emerge moments later and retrieve a handgun from his vehicle; Appellant, while holding the gun, aggressively approached Son's vehicle as it backed out of the driveway; the vehicle's flight became erratic as Appellant approached; and Girlfriend physically intervened and restrained the arm and hand in which Appellant held the gun as he attempted to raise it. Both Son and Daughter-in-Law testified that they observed Appellant retrieve the gun from his vehicle, *see* N.T. Trial, 6/3/24, at 11,21, and Daughter-in-Law testified that she felt terrified and

feared for their lives as their vehicle pulled out of Appellant's driveway. *See id.* at 22; *Demulter*, 314 A.3d at 938. She further testified on cross-examination that the children were "freaking out" during the episode. *See* N.T. Trial, 6/3/24, at 23.

Notably, during this encounter, Son did not threaten Appellant with an equally violent act. Rather, by the time Appellant retrieved his gun and stormed toward Son's vehicle, Son was already retreating from Appellant's property. As such, Appellant cannot reasonably argue that his intent in brandishing his gun as he approached Son's vehicle was merely to use an appropriate amount of force to get Son to leave his property, *see* Appellant's Brief, at 16, 20, because Son was already leaving. *Compare Commonwealth v. Anneski*, 525 A.2d 373, 376 (Pa. Super. 1987) (finding evidence insufficient to sustain terroristic threats conviction where surrounding circumstances indicated appellant's statement that she would retrieve and use a gun against neighbor during argument "was a spur-of-the-moment threat" that resulted "from transitory anger prompted by [neighbor's equally violent] threat to hit [appellant's] children with her car").

In our view, the totality of the circumstances clearly provided a sufficient basis for the trial court, as fact-finder, to infer that by aggressively advancing toward the retreating vehicle with a firearm, Appellant both attempted by physical menace to put the vehicle's occupants in fear of imminent serious bodily injury and communicated a threat to the vehicle's occupants with the

intent to terrorize. *See* 18 Pa.C.S.A. §§ 2701(a)(3), 2706(e). Moreover, Appellant's contention that the evidence was insufficient to sustain his simple assault by physical menace convictions with respect to his three grandchildren similarly lacks merit.[5] Appellant avers the evidence was insufficient for failing to establish that his grandchildren were under the age of twelve, where their dates of birth were neither stipulated nor testified to at trial. *See* Appellant's Brief, at 17. However, at trial, Son testified that at the time of the incident, his children were eleven, eight, and two years old. *See* N.T. Trial, 6/3/24, at 11. Accordingly, the Commonwealth presented sufficient evidence to establish that the children were under the age of twelve, and this argument also fails.

Finally, Appellant avers the Commonwealth's evidence was insufficient to find him guilty of simple assault under Section 2701(a)(1) because it did not establish that it was his "conscious intent to cause bodily injury to [Girlfriend]." Appellant's Brief, at 18 (emphasis omitted). Although Appellant acknowledges that Girlfriend's identity in the video was stipulated to at trial, he nevertheless alleges that the Commonwealth's evidence was insufficient to establish intent to inflict bodily injury because Girlfriend did not testify to "any of the details surrounding the interaction" or to "being afraid of any injuries." Appellant's Brief, at 18-19. We disagree.

---

[5] Simple assault is a misdemeanor of the first degree if committed "against a child under 12 years of age by person 18 years of age or older[.]" 18 Pa.C.S.A. § 2701(b)(2).

A person is guilty of simple assault under section 2701(a)(1) if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1). "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301. "The Commonwealth need not establish the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury." *Commonwealth v. Wroten*, 257 A.3d 734, 743-44 (Pa. Super. 2021) (citations omitted). "A person commits an attempt when, with intent[6] to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). "This intent may be shown by circumstances, which reasonably suggest that a defendant intended to cause injury." *Wroten*, 257 A.3d at 744 (citation omitted). Thus, an attempt under section 2701(a)(1) requires an act that constitutes a substantial step toward inflicting bodily injury and direct or circumstantial evidence of intent to inflict bodily injury.

Here, upon viewing the evidence presented at trial in the light most favorable to the Commonwealth, we find the evidence sufficient to sustain Appellant's simple assault conviction under section 2701(a)(1). The video

---

[6] "A person acts intentionally with respect to a material element of an offense when… it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S.A. § 302(b)(1)(i).

presented at trial captured Appellant's physical altercation with Girlfriend. In the video, Appellant, who is of much greater stature than Girlfriend, is depicted in a physical entanglement with her, and he clearly discharges his firearm in close proximity while the pair were still struggling. Based on this evidence, the fact-finder could reasonably infer that Appellant had intent to inflict bodily injury and took a significant step toward inflicting bodily injury; consequently, this sufficiency challenge likewise fails.

Therefore, we find that the Commonwealth presented sufficient evidence to sustain Appellant's simple assault and terroristic threats convictions. Accordingly, Appellant's first issue does not merit relief.

In his second issue, Reichert claims his convictions of simple assault and terroristic threats were against the weight of the evidence. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Pledger*, 332 A.3d 29, 35 (Pa. Super. 2024) (brackets and citation omitted).

> A new trial may be granted on the ground that the verdict is against the weight of the evidence only where the verdict was so contrary to the evidence that it shocks the trial court's sense of justice. Our review of the denial of a motion for a new trial based on weight of the evidence is limited. We review whether the trial court abused its discretion in concluding that the verdict was not against the weight of the evidence, not whether the verdict, in this Court's opinion, was against the weight of the evidence.
>
> > Because the trial judge [] had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced

> by the trial judge[. …] One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.

*Commonwealth v. Mead*, 326 A.3d 1006, 1011 (Pa. Super. 2024) (citations omitted).

Appellant avers his convictions were contrary to the weight of the evidence because the trial court failed to recognize that "uncontradicted video evidence directly contradicted the [witnesses'] testimony and tended to corroborate [Appellant's testimony]." Appellant's Brief, at 21 (unnecessary capitalization omitted). Specifically, Appellant alleges the trial court erred in concluding that "the act of retrieving the firearm and pointing it at the victims while they were in their vehicle was evidence beyond a reasonable doubt" to support his simple assault and terroristic threats convictions. Appellant's Brief, at 23. We disagree.

Here, the trial court determined that the verdict "could not be shocking to one's conscience, as it was well supported by the evidence presented at [] [t]rial." Trial Court Opinion, 12/30/24, at 9 (unpaginated). Essentially, Appellant's challenge is predicated on the trial court's credibility determinations. *See Commonwealth v. Rivera*, 238 A.3d 482, 498 (Pa. Super. 2020) (weight challenges predicated on credibility of trial testimony are not cognizable on appellate review "unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture") (citation omitted). Appellant asks this Court to reweigh evidence and override

the trial court's credibility determinations, which we lack authority to do. ***See Pledger***, 332 A.3d at 35. Upon review, we discern no abuse of discretion by the trial court in determining that the verdicts were supported by the evidence and did not shock its conscience. ***See Mead***, 326 A.3d at 1011. As discussed at length above, the Commonwealth presented ample evidence to support Appellant's convictions. Accordingly, Appellant's second issue also fails.

For the foregoing reasons, Appellant is not entitled to his requested relief, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/27/2025