J-A19042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TESEAN LAMONT SALTER | : | |
| | : | |
| Appellant | : | No. 1428 WDA 2024 |

Appeal from the Judgment of Sentence Entered May 13, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0001105-2023

BEFORE:  BOWES, J., STABILE, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED: NOVEMBER 12, 2025**

Tesean Lamont Salter appeals from the sentence of eighteen months of probation and the issuance of a $25 fine following his conviction for firearms not to be carried without a license, driving without a license, and failure to use a safety belt.  We affirm the sentence of eighteen months of probation, but vacate the conviction of failure to use a safety belt and the corresponding fine.

The trial court summarized the facts of the case in its order denying Appellant's motion to suppress:

> [On December 31, 2022, Officer Craig Sulkowski of the Pittsburgh Police Department arrived] at 1200 Stanmore Street due to a complaint that there were approximately 150 juveniles at an Airbnb.  Officer Sulkowski observed four individuals enter a black Honda CRV that was parked across the street from the Airbnb.  Officer Sulkowski observed that after the individuals entered the vehicle, it began to back up as if it was attempting to leave its parking space. . . . [The officer] did not believe the vehicle "had anywhere else to go" due to the police vehicles being parked in the middle of the street and . . . decided to approach the vehicle.

As [Officer Sulkowski] approached the vehicle [aided by his flashlight], he noticed that a passenger was holding an open container of alcohol and that the driver[, Appellant,] was not wearing a seat belt. Further, [the officer directly observed front passenger Anando Johnson roll] down his window and [dispose] of what Officer Sulkowski believed to be a marijuana cigar.

. . . .

After Officer Sulkowski approached the vehicle and began to interact with its occupants, he observed that . . . Johnson was nervous[,] . . . "biting his nails, and touching his face." In addition, when asked if he had any firearms in the vehicle . . . Johnson replied, "'no,' broke eye contact with [Officer Sulkowski,] and looked down at his waistband."

Due to . . . Johnson's actions, as well as Officer Sulkowski's experience and knowledge of numerous Airbnb incidents involving shootings, [the officer] had reasonable and articulable suspicion that . . . Johnson was in possession of a firearm[,] justifying his request for [identification from the vehicle's occupants, asking] . . . Johnson to step out of the vehicle and be subject to a pat-down.

After locating a firearm and baggies containing suspected marijuana in . . . Johnson's pants, Officer Sulkowski requested that the remaining occupants be removed from the vehicle to conduct a wingspan search.

[When Appellant] was removed from the vehicle, Officer Sulkowski looked through the windshield and observed a firearm under his seat. As Officer Sulkowski was aware that neither [Appellant] nor the other occupants of the vehicle possessed a license to carry a concealed weapon [based upon running their information through the NCIS system], the incriminating nature of the firearm was readily apparent and a warrant was not required.

Order of Court, 1/11/24, at 1-3 (cleaned up, paragraph numbers omitted).

The Commonwealth charged Appellant with firearms not to be carried without a license, driving without a license, and failure to use a safety belt.

- 2 -

As will be discussed in further detail below, the safety belt violation was charged pursuant to 75 Pa.C.S. § 4581(a)(2)(i), which pertains to the requirement of ensuring that drivers and passengers under the age of eighteen years old are properly restrained. The Commonwealth also accused Johnson of violating the statutes for firearms not to be carried without a license, along with other crimes that were eventually withdrawn by the Commonwealth. All counts were held for court at the conclusion of a preliminary hearing. Both co-defendants filed a suppression motion, with Appellant arguing that the warrantless search of his car violated his rights afforded by both Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution.

In a joint hearing, the trial court reviewed the audio-video recording from Officer Sulkowski's body camera capturing the incident. Following the hearing, the court denied the motions, finding that Officer Sulkowski had: (1) probable cause to stop the vehicle due to seeing a passenger holding an open container of alcohol, Appellant not wearing a seatbelt, and Johnson discarding a marijuana blunt; (2) reasonable and articulable suspicion that Johnson was carrying a firearm without a license, providing justification for Officer Sulkowski's request for him to step out of the vehicle and be subject to a pat-down; (3) upon discovering Johnson possessed a firearm without a license and bags of marijuana, valid reasons for ordering the remaining occupants out of the vehicle for safety; (4) plain sight of a firearm under the driver's seat

J-A19042-25

as Appellant exited the vehicle; and (5) grounds for making a custodial arrest of Appellant without a warrant because Appellant did not have a license to carry. *See* Order of Court, 1/11/24, at 1-3. Johnson filed, and Appellant joined, a motion to reconsider the suppression ruling, which the trial court denied.

Both Appellant and Johnson waived their right to a jury, proceeding to stipulated bench trials that were conducted concurrently. The stipulations included that the vehicle in question belonged to Appellant's mother, and that the handgun was operable and met the statutory definition of a firearm. *See* N.T. Trial, 4/3/24, at 7-8. At the trial's conclusion, the court found Appellant guilty of all three charges. Appellant was sentenced as indicated above, with the court imposing probation for the firearms conviction and a $25 fine for violating the safety belt provision. Appellant retained new counsel who filed, with leave of court, a post-sentence motion *nunc pro tunc*. The court denied the motion and this timely appeal followed.[1] Both the trial court and Appellant abided by their duties prescribed by Pa.R.A.P. 1925.

_____

[1] The deadline for the court to decide Appellant's post-sentence motion expired on October 3, 2024, but the clerk of courts failed to enter an order deeming the motion denied. Instead, the trial court denied the post-sentence motion on November 18, 2025, and Appellant filed an appeal the next day. This deviation from the mandates of Pa.R.Crim.P. 720(B)(3)(c) qualifies as a court breakdown. *See*, *e.g.*, *Commonwealth v. Patterson*, 940 A.2d 493, 499-500 (Pa.Super. 2007) (determining court breakdown caused appellant to delay filing of appeal). Accordingly, this Court declines to quash the appeal and proceeds to consider Appellant's substantive issues.

- 4 -

Appellant raises five issues on appeal, which we have reordered for ease of disposition:

1. Whether the court of common pleas erred in denying [Appellant's] motion to suppress when [Appellant] and his vehicle were seized based only upon him not wearing a seatbelt when operating a motor vehicle and frequent presence of guns at overcrowded Airbnb gatherings involving juveniles?

2. Whether the evidence was sufficient to show [Appellant] had constructive possession of the firearm found under his seat in a vehicle when there were four occupants of that vehicle, including a passenger behind [Appellant]?

3. Whether the evidence [was] insufficient to establish the requisite barrel length of the firearm to support the conviction for possession of firearm without a license under 18 Pa.C.S. § 6106(a)?

4. Whether the evidence to support the conviction at Count 3 (75 Pa.C.S. § 4581(a)(2)(i)) was insufficient where no evidence was presented to show that any of the [four] occupants were under the age of [eighteen] year[s]—which is a necessary element of that offense—and, on the contrary, all occupants were over the age of [eighteen] years at the time of the offense on December 31, 2022?

5. Whether the $25.00 fine imposed at Count 3 is illegal because 75 Pa.C.S. § 4581(b) limits the fine to $10.00 for all violations of 75 Pa.C.S. § 4581(a)(2)?

Appellant's brief at 4 (cleaned up).

We first examine Appellant's challenge to the court's denial of his suppression motion. Our applicable standard of review "is *de novo* and is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Green**, 265 A.3d 541, 550 (Pa. 2021) (cleaned up). "[W]e may consider only the evidence of the Commonwealth

- 5 -

and so much evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial." ***Commonwealth v. Hoyle***, 337 A.3d 544, 561 (Pa.Super. 2025) (citation omitted). At the suppression hearing, the Commonwealth bears the burden of establishing by a preponderance of the evidence that the evidence was lawfully obtained. ***See Commonwealth v. Shackelford***, 293 A.3d 692, 698 (Pa.Super. 2023).

The Commonwealth recognizes three types of police interactions with members of the public, each requiring a different requisite level of suspicion:

> The first is a mere encounter, sometimes referred to as a consensual encounter, which does not require the officer to have any suspicion that the citizen is or has been engaged in criminal activity. This interaction also does not compel the citizen to stop or respond to the officer. A mere encounter does not constitute a seizure, as the citizen is free to choose whether to engage with the officer and comply with any requests made or, conversely, to ignore the officer and continue on his or her way. The second type of interaction, an investigative detention, is a temporary detention of a citizen. This interaction constitutes a seizure of a person, and to be constitutionally valid police must have a reasonable suspicion that criminal activity is afoot. The third, a custodial detention, is the functional equivalent of an arrest and must be supported by probable cause. A custodial detention also constitutes a seizure.

***Commonwealth v. Adams***, 205 A.3d 1195, 1199-200 (Pa. 2019) (cleaned up). This Court employs the "free to leave test," requiring the court to evaluate the totality of the circumstances and determine whether the officer's conduct would have communicated to a reasonable person that they were free to ignore the officer and leave the scene, demarcating the line between mere

encounter and investigative detention. *See Adams*, 205 A.3d at 1200. A person is considered seized when their freedom of movement is restrained by the officer's conduct. *Id*. (citing *Terry v. Ohio*, 392 U.S. 1, 16 (1968)).

Investigatory stops, involving a period of detention but not involving an arrest, require reasonable suspicion. *See Commonwealth v. Goodwin*, 750 A.2d 795, 798 (Pa. 2000) (citing *Terry*, 392 U.S. at 1). Reasonable suspicion requires "specific and articulable facts which lead them to suspect criminal activity." *Commonwealth v. Melendez*, 676 A.2d 226, 228 (Pa. 1996) (cleaned up). "[A] police officer must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of the officer's experience." *Commonwealth v. Valentin*, 748 A.2d 711, 714 (Pa.Super. 2000) (cleaned up). Investigative stops must be based on more than just "inarticulate hunches." *Terry*, 392 U.S. 1 at 22.

Finally, we note that "the subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment." *Commonwealth v. Jackson*, 302 A.3d 737, 748 (Pa. 2023).

At the root of Appellant's claim is the question of when Officer Sulkowski's interaction with the co-defendants became an investigative detention. He asserts that the officer acquired reasonable suspicion of criminal activity only after he had effectuated a stop, which according to Appellant was "by the time he approached the vehicle [with his flashlight in

hand] on the right from the front and his partner, Officer Castanzo[2], following behind, round[ed] the front of the vehicle and turned to approach the driver's side." Appellant's brief at 17-18. Stated another way, the stop occurred when the officers approached near the car. At this point, Appellant avers that his vehicle was blocked from leaving the scene by police. *Id*. at 18-19. Therefore, Appellant contends that the only articulable facts formulating Officer Sulkowski's actions at that moment would have been the safety belt violation and his prior experience in responding to juvenile Airbnb parties. *Id*. at 20. Appellant points to caselaw for the proposition that a traffic stop cannot be conducted based on a seat belt violation alone. *Id*. at 15-16 (citing **Commonwealth v. Henderson**, 663 A.2d 728, 735 (Pa.Super. 1995) (en banc)).

The trial did not determine the precise moment it believed an investigatory detention occurred in this matter, but it nonetheless found that Officer Sulkowski acquired the requisite suspicion to stop the vehicle once he had sighted: (1) a passenger holding an open container of alcohol; (2) Appellant not wearing a seatbelt; and (3) Johnson rolling down his window and disposing a marijuana cigar." **See** Order of Court, 1/11/24, at 2.

For its part, the Commonwealth maintains that Officer Sulkowski only engaged in a mere encounter when he originally approached the vehicle with the flashlight drawn. It rejects that the officer "stopped" the vehicle before

---

[2] Officer Castanzo's first name does not appear in the record.

giving any commands because there was not "any tone or demeanor exhibited by the officer that would have qualified as a particular show of authority or exercise of force." Commonwealth's brief at 24. Rather, Officer Sulkowski merely approached Appellant's vehicle "with a flashlight as the street filled with people leaving the party at the Airbnb." *Id*. The Commonwealth points to the fact that the road obstacles posed by the police vehicles were in place prior to Appellant entering his car, which prevents him from asserting that he was trapped by police so as to manufacture an investigative detention. *Id*. at 23-24.

Upon review, we find that the trial court did not err in denying Appellant's motion to suppress. Appellant's contention that Officer Sulkowski initiated an investigative detention without the requisite suspicion of criminal activity is plainly belied by the record. The body camera footage from the officer confirmed that he watched Johnson throw the marijuana cigar into the street from only a few feet away, **before** taking any action beyond simply approaching with the flashlight. This was in addition to observing Appellant being unbuckled, despite attempting to back the car up, and another individual holding open alcohol in the vehicle. Only subsequent to seeing all of those things did the officer then initiate a conversation and ask for identification, which was thus when the mere encounter escalated to an investigative detention.

We have no trouble discerning that at that point, the officer not only had reasonable suspicion but also probable cause, permitting him to conduct

further inquiry into whether criminal activity was afoot and to what extent Appellant was involved. *See Commonwealth v. Rice*, 304 A.3d 1255, 1261 (Pa.Super. 2023). Further, to the extent that Appellant's argument relies on Officer Sulkowski's subjective belief, that he "seized" the vehicle at the moment he approached with his flashlight engaged, that is not controlling. *See Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa.Super. 2009). *See also Maryland v. Macon*, 472 U.S. 463, 470 (1985) ("Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time[.]" (cleaned up)). Finally, Appellant has not persuaded us that there was an investigative detention when the officer approached on foot merely because there were other police cars parked within the street and that it would have been difficult to pull around the officer. The cases he relies upon, where police actively block a defendant's vehicle as part of a stop, are plainly distinguishable. Accordingly, we find that the suppression court's factual findings are correct and supported by the record. *See Green*, 265 A.3d at 550.

Appellant next raises three challenges to the sufficiency of the evidence supporting his convictions, which we address together. Sufficiency contests are pure questions of law, with a *de novo* standard of review and a plenary scope of review. *See Commonwealth v. Jacoby*, 170 A.3d 1065, 1076 (Pa. 2017). This Court is required to consider the evidence presented at trial in a light most favorable to the Commonwealth, allowing for reasonable

- 10 -

inferences. *See Commonwealth v. Briggs*, 12 A.3d 291, 306 (Pa. 2011).

Evidence is legally sufficient if the Commonwealth proves all elements of a

charge beyond a reasonable doubt. *Id*. at 306. "As a reviewing court, we

may not weigh the evidence and substitute our judgment for that of the fact-

finder. Furthermore, a fact-finder is free to believe all, part or none of the

evidence presented." *Commonwealth v. Brooks*, 7 A.3d 852, 860

(Pa.Super. 2010) (citation omitted). Doubts pertaining to a defendant's guilt

may be resolved by the fact-finder "unless the evidence is so weak and

inconclusive that as a matter of law no probability of fact may be drawn from

the combined circumstances. The Commonwealth may sustain its burden of

proving every element of the crime beyond a reasonable doubt by means of

wholly circumstantial evidence." *Commonwealth v. Bruce*, 916 A.2d 657,

661 (Pa.Super. 2007) (citation omitted).

Appellant's first sufficiency claim asserts that the evidence was

inadequate to show that he had constructive possession of the firearm found

under his seat, arguing that the totality of the circumstances only reflect his

proximity to the firearm, not his knowledge of its existence. *See* Appellant's

brief at 37.

Our Crimes Code states that "[a]ny person who carries a firearm in any

vehicle . . . without a valid and lawfully issued license under this chapter

commits a felony of the third degree." 18 Pa.C.S. § 6106(a)(1). Possession

of contraband can be established by proving actual possession, constructive

possession, or joint possession. *See Commonwealth v. Bowens*, 265 A.3d

- 11 -

730, 741 (Pa.Super. 2021*).* We have stated that constructive possession can be found where an individual does not have "actual possession" over contraband but does have "conscious dominion." *Commonwealth v. Heidler*, 741 A.2d 213, 215-16 (Pa.Super. 1999) (*en banc*). An individual lacks conscious dominion "where another person has equal access to the area where illegal contraband . . . is found." *Heidler*, 741 A.2d at 216.

Additionally, "conscious dominion . . . requires two elements: the power to control the contraband and the intent to exert such control." *Commonwealth v. Battle*, 883 A.2d 641, 645 (Pa.Super. 2005) (cleaned up). Constructive possession can be inferred through whether the defendant was more likely than not in possession of contraband, further aided by the establishment of the totality of the circumstances. *See Commonwealth v. Best*, 120 A.3d 329, 343 (Pa.Super 2015). "Mere presence or proximity to the contraband is not enough." *Commonwealth v. Peters*, 218 A.3d 1206, 1209 (2019) (citation omitted).

Appellant argues that the evidence only established his presence near the weapon, and therefore constructive possession cannot as a matter of law be proven through a totality of the circumstances. *See* Appellant's brief at 39. He relies on *Commonwealth v. Boatwright*, 453 A.2d 1058, 1059 (Pa.Super. 1982), for support. In that case, the defendant was determined not to have constructive possession of a firearm found on the left rear floor of a vehicle, despite the defendant, who was sitting in the front passenger seat, making a furtive movement towards the left rear seat immediately prior to the

officer opening the vehicle door and discovering the firearm. *Id*. at 1059. In so concluding, we noted that "[t]he officer could not see [the defendant]'s hand or arm, only a movement of his body." *Id*. at 1058. Furthermore, "[t]he car was registered to the driver's girlfriend and the gun to [another individual]." *Id*.

The Commonwealth counters with a number of other factors not considered by Appellant, which tend to establish the power and intent to control the firearm. These include the car's registration to Appellant's mother, the clear visibility of the firearm to Officer Sulkowski while standing outside the vehicle, and the lack of space below Appellant's seat which prevented the weapon's placement by either of the backseat passengers. *See* Commonwealth's brief at 37.

We agree with the Commonwealth that it produced sufficient evidence to support Appellant's conviction. To begin, the circumstances here are decidedly different than in *Boatwright*. The trial court found Officer Sulkowski's suppression testimony credible, and that testimony was incorporated at the stipulated bench trial. N.T. Trial, 4/3/24, at 25. Appellant was the driver and in control of the vehicle, unlike Boatwright, who was a passenger. *Id*. at 13. The parties stipulated at trial to the vehicle in question being registered to Appellant's mother. *Id*. at 15-19. Appellant's front-seat passenger, Johnson, was found to be in actual possession of a separate firearm on his person. *See* N.T. Suppression, 11/6/23, at 11. Importantly,

the firearm was under Appellant's seat, and thus within easy reach. ***Id***. at 26-27.

Additionally, Officer Sulkowski's testimony at the preliminary hearing, which was incorporated into the record at the subsequent suppression hearing and stipulated trial, established that the firearm could not slide any further under the seat towards the back, further supporting the inference that the firearm under the driver's seat was placed there by Appellant, the driver. ***See*** N.T. Trial, 4/3/24, at 7 (incorporating the suppression record for trial). These facts mitigate the ***Hiedler*** Court's guiding concern that someone else had "equal access" to the firearm. ***See***, ***e.g.***, ***Commonwealth v. McIntyre***, 333 A.3d 417, 433 (Pa.Super. 2025) ("Here, unlike in ***Heidler***, no one other than the accused had equal access to or control of the firearm in this case.").

Viewed in the light most favorable to the Commonwealth, the totality of the circumstances established that Appellant had both the power to control and the intent to exert such control over the firearm. ***See Battle***, 883 A.2d at 645. Accordingly, no relief is due.

We next turn to Appellant's assertion that the evidence presented at trial was insufficient to support the conviction for possession of a firearm without a license because the Commonwealth did not establish that the weapon seized from the vehicle was a "firearm." Appellant's brief at 34. As noted previously, anyone carrying a firearm in a vehicle without "a valid and lawfully issued license under this chapter commits a felony of the third degree." 18 Pa.C.S. § 6106(a)(1). The definition of firearm is as follows:

> Any pistol or revolver with a barrel length less than [fifteen] inches
> . . . or any pistol . . . with an overall length of less than [twenty-six] inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable.

18 Pa.C.S. § 6102(2).

Further, as discussed, Appellant entered into a stipulation at trial that the recovered weapon met the statutory definition of a firearm. "[F]or a stipulation to be enforceable it must be valid. While parties have wide latitude to enter into valid and enforceable stipulations, that ability is not unfettered. . . . [P]arties cannot stipulate to matters affecting the jurisdiction, business, or convenience of the courts." **Commonwealth v. Perrin**, 291 A.3d 337, 345 (Pa. 2023). Courts still have discretion to accept or reject factual stipulations and are not "relegated to a mere rubber stamp for the parties." *Id*. at 344-45. **See also Commonwealth v. Padilla**, 80 A.3d 1238, 1272 (Pa. 2013) (holding that challenges to the sufficiency of the evidence must be evaluated based on all evidence admitted at trial, including stipulations, and that such challenges cannot serve as an alternative means to review trial court or counsel errors).

We recount that at trial, both Appellant and Johnson stipulated "to the admissibility and authenticity of the Allegheny County Crime Lab . . . [report] which showed that both firearms seized in this case were sent to the crime lab, tested by the crime lab and found to be operable **meeting the definition of a firearm**." N.T. Trial, 4/3/24, at 7-8 (emphasis added). Based on this, the trial court concluded in its opinion that both defendants therefore

- 15 -

stipulated to the seized firearms as meeting the statutory definition of firearm. *See* Opinion of Court, 1/23/25, at 3-4.

The court's finding is not in error. The evidence, viewed in the Commonwealth's favor, plainly reflects the stipulations in question. Despite Appellant's contention, the stipulation on the record is not limited merely to operability, but also expressly acknowledged the definition of "firearm" being satisfied. Appellant cannot now be heard for the first time on appeal to allege that the stipulation was limited in scope, despite its broad language.

Moreover, aside from the stipulation, we note that the handgun was visible on Officer Sulkowski's body camera when it was held in the officer's hand, which a factfinder could then rely upon to ascertain the barrel length or overall length. *See*, *e.g.*, *Commonwealth v. Jennings,* 427 A.2d 231, 235 (Pa. 1981) (determining that firearm barrel length can be established by circumstantial evidence such as sight, feel, or sound). Although Appellant avers that the slide of the firearm exceeded the stretch of the officer's hand, this did not prevent the court from determining that the handgun overall or its barrel was sufficiently short as to constitute a firearm. *See*, *e.g.*, *Bruce*, 916 A.2d at 661 (holding that doubts pertaining to a defendant's guilt may be resolved by the fact-finder "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances"). Consequently, we do not disturb this finding.

Appellant's final sufficiency challenge claims that the Commonwealth's failure to present evidence demonstrating the age of either him or the occupants of the vehicle amounts to a failure to produce one of the necessary elements of the failure to use a safety belt charge. We are constrained to agree.

The relevant statute is 75 Pa.C.S. § 4581, and which reads as follows in relevant part:

(a) *Occupant protection.*

. . . .

(2)(i) The driver of a passenger car, Class I truck, Class II truck or motor home operated in this Commonwealth shall:

(A) **if under 18 years of age**, be secured in a properly adjusted and fastened safety seat belt system; and

(B) secure or cause to be secured in a properly adjusted and fastened safety seat belt every vehicle occupant **eight years of age or older but under 18 years of age**.

(ii) **Except** **for children under 18 years of age** and except as provided in paragraphs (1) and (1.1) and subparagraph (i), each driver and front seat occupant of a passenger car, Class I truck, Class II truck, classic motor vehicle, antique motor vehicle or motor home operated in this Commonwealth shall wear a properly adjusted and fastened safety seat belt system.

. . . .

(b) *Offense.* — Anyone who fails to comply with the provisions of subsection (a)(1) or (1.1) commits a summary offense and shall, upon conviction, be sentenced to pay a fine of $75.

75 Pa.C.S. § 4581 (emphases added).

Read as a whole, age is a present and clear element to prove a conviction under any of the subsections listed above. Appellant correctly notes in his brief that the Commonwealth never presented at trial evidence of the ages of him or the passengers, despite him being charged with § 4581(a)(2)(i). **See** Appellant's brief at 21. The trial court opined that there was a "scrivener's error" within the criminal information and that Appellant "should have been charged under [subsection (a)(2)(ii), not (a)(2)(i)]." Trial Court Opinion, 1/23/25, at 3.

The Commonwealth attempts to characterize Appellant's sufficiency challenge as an allegation of error in the criminal information, which, if successful, could result in waiver of this issue under Pa.R.A.P. 302(a).[3] While there is clearly a discrepancy between the section charged against Appellant and the evidence adduced at trial, we differentiate from the circumstances presented in **Commonwealth v. Demulter**, 314 A.3d 934, 938 (Pa.Super. 2024), which the Commonwealth attempts to apply here. **See** Commonwealth's brief at 28-29. In **Demulter**, this Court determined that the defendant's sufficiency challenge for a conviction of intimidation of a witness was, in fact, a contention that a mistake had been made in the criminal

---

[3] In response, Appellant reaffirms his intent that the issue was one of sufficiency rather than an error in the criminal information. **See** Appellant's reply brief at 5.

information.  *See Demulter*, 314 A.3d at 938.  The conflicting subsections of the statute at issue there were between the **prevention of reporting** a crime versus the **intimidation to discourage witness testimony**, the statute dividing each subsection by mode of occurrence.  *Id*. at 938.  Specifically, the defendant was charged with the crime of preventing a witness from reporting, whereas the evidence at trial clearly went to the subsection concerning prevention of witness testimony.  We concluded that since Demulter did not challenge the criminal information or point out that the wrong subsection was charged, the issue was waived.[4]

In the case *sub judice*, 75 Pa.C.S. § 4581(a)(2), clearly divides each subsection of the statute by age.  Regardless of whether Appellant was charged with subsection (2)(i) or (2)(ii), as the trial court opined, evidence of age was a necessary element of the Commonwealth's proving a violation of failure to use a safety belt.  The Commonwealth's omission of evidence showing **any** age during trial compels us to conclude that this issue relates to sufficiency of the evidence.  Unlike in **Demulter**, the Commonwealth did not prove a wrongly charged subsection of a crime.  It simply did not prove any of the applicable subsections with which Appellant could have been charged.

---

[4] Even without waiving the issue, the appellant in that case "was not surprised by the facts raised at trial," did not prove she was prejudiced by the mistake, and "knew exactly what she was defending against." **Demulter**, 314 A.3d at 941.

By neglecting to adduce evidence as to the element of age, there was insufficient evidence of any safety belt violation.[5]  Hence, we vacate the sentence and reverse Appellant's conviction under 75 Pa.C.S. § 4581(a)(2)(i).[6]

Based on the above, we affirm the judgment of sentence of eighteen months of probation arising from the conviction of firearms not to be carried without a license and driving without a license.  We reverse the conviction of failure to use a safety belt, and vacate the corresponding $25 fine.

Judgment of sentence affirmed in part and vacated in part.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/12/2025

---

[5] We note moreover that the Commonwealth did not at any time seek to amend the criminal information to conform the charges to the evidence heard at trial.

[6] Due to vacating Appellant's fine arising from this conviction, Appellant's issue challenging the legality of the fine is rendered moot.